IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELIZABETH ANN T.,                §
                                 §
            Plaintiff,           §
                                 §        No. 3:19-cv-00327-K-BN
V.                               §
                                 §
ANDREW SAUL,                     §
Commissioner of Social Security, §
                                 §
            Defendant.           §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Elizabeth Ann T. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to cervical and lumbar degenerative disc disease, coronary artery disease, carpal tunnel syndrome, obesity, plantar fasciitis, vertigo and Méniére's disorder. After her application for a period of disability, disability insurance benefits, and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on April 6, 2018. *See* Dkt. No. 13-1 at 141-54. At the time of the hearing, Plaintiff was 53 years old. She attended school until the seventh grade, but later obtained a GED, and has past work experience

as a home attendant. Plaintiff has not engaged in substantial gainful activity since November 16, 2015. *See* Dkt. No. 13-1 at 127.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 125-36. Although the medical evidence establishes that Plaintiff suffers from vertigo and Ménière's disease, the ALJ concluded that those impairments were non-severe. The ALJ further determined that Plaintiff had the residual functional capacity to perform light work which included representative occupations such as assembler of small products (DOT Code 706.684-022), electronics worker (DOT Code 626.687-010), and hand packager (DOT Code 559.687-074). Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and otherwise capable of making a successful adjustment to such work.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on five grounds: (1) Plaintiff did not effectively waive her right to an attorney; (2) Plaintiff was not afforded an opportunity to cross-examine the vocational expert ("VE"); (3) the ALJ applied an improper legal standard in defining Plaintiff's impairments; (4) the ALJ failed to incorporate limitations he deemed to be severe; and (5) the ALJ failed to establish that the jobs upon which he relied exist in significant numbers in the economy.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions

are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

I.     <u>Plaintiff knowingly and intelligently waived her right to representation.</u>

Plaintiff contends that she did not knowingly and intelligently waive her right to counsel at the administrative hearing because the ALJ failed to adequately explain how an attorney could help her.

A claimant has a statutory right to representation at an administrative hearing. *See* 42 U.S.C. § 406; 20 C.F.R.§ 404.1705; 20 C.F.R. § 416.1505; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). Any waiver of this right must be knowingly and intelligently effected. *See Gullett v. Chater*, 976 F. Supp. 614, 620 (E.D. Tex. 1997) (citing *Brock v. Chater*, 84 F.3 726, 729 n.1 (5th Cir. 1996)); *Freeman-Park v. Barnhart*, 973 F. Supp. 2d 597, 601 (E.D. Tex. 2006).

Plaintiff does not dispute that she received written notice of the right to representation before the scheduled hearing with the ALJ. And the record reflects that Plaintiff received a letter from the Social Security Administration, dated April 17, 2017, in which Plaintiff was advised that she could have someone, including a lawyer, represent her in any appeal or new application and that free legal services may be available to her. *See* Dkt. No. 13-1 at 212. Plaintiff also received a two-page document that is "Your Right to Representation" and explains her right to counsel, including what an attorney could do for her and what they could charge. *See id.* at 215-16. And Plaintiff received a list of organizations that could potentially provide her with free legal help. *See id.* at 217-20. Plaintiff also received the same

information about her right to counsel and what an attorney could do for her in her "Notice of Hearing," dated November 7, 2017. *See id.* at 230-38.

Nor does Plaintiff contend that she did not receive oral notification of the right to representation. Instead, she claims that the oral notification she did receive was insufficient.

After giving a claimant written notice prior to the hearing, "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Freeman-Park*, 973 F. Supp. 2d at 621 (citing *Frank v. Chater*, 924 F. Supp. 416, 426 (E.D.N.Y. 1996)). Additionally, at the hearing, the ALJ should ascertain whether claimant had a "meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity." *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981) (citing *Frank*, 924 F. Supp. at 426).

Here, the ALJ addressed Plaintiff's right to representation during the opening statement at the hearing:

> ALJ:  Now, one of the reasons you're here today is obviously your hearing. You should have gotten a Notice of Hearing in the mail telling you about today's –
>
> CLMT: Yes, sir.
>
> ALJ:  – time and place. That should also have included information that you have a right to go forward today on your own. You also have a right to have a lawyer or claims representative help you out. These are people – they can charge a fee for their services, but they can never charge anything up front. They can only

collect if they win your case. They call that a contingency fee. Did you give any thought as to whether or not you wanted to hire somebody?

CLMT: I really don't know. I have my niece that's been helping me with All my paperwork, she just text me and said that she was on her – she was on her – she was parking and she was on her way up because I've never had to do anything like this. So, I mean I –

ALJ: Right.

CLMT: – asked her –

ALJ: But I'm not talking about like your niece, I'm talking about a professional that knows about Social Security law. So, if you were interested in having, say, 30 to 60 days to try to find somebody, that's acceptable to me. You go out and you find somebody. They make sure that your file is up to date, you have everything in the case that you need. And they help present your case. Or you can go forward today on your own, it's up to you, so.

CLMT: Okay.

ALJ: I just need to advise you the choices that you can make.

CLMT: Okay. I don't know what to do. I mean, all I can do is tell y'all the truth.

ALJ: Would you like to go forward today on your own?

CLMT: I guess.

ALJ: Okay. Well, it's your choice, so it's your decision. If you do –what I do is I get background information from you. I'll get job information from Ms. McLaughlin. And then I review everything and just make a decision.

CLMT: Okay.

ALJ: Takes about 30 days to get the decision.

CLMT: Okay.

-8-

ALJ:   Right.

Dkt. No. 13-1 at 143-45.

Plaintiff argues that the ALJ should have notified her of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, the limitation of attorneys' fees to twenty-five percent of past due benefits, and the required court approval of the fees. *See* Dkt. No. 16 at 7-10. But Plaintiff already received that information twice in writing, and she acknowledged receiving that information at the administrative hearing.

And Plaintiff attended school until the seventh grade but later returned to obtain a GED. She does not suffer from mental or cognitive impairment that would otherwise inhibit her capacity to effectively waive her right to counsel. The ALJ offered to postpone the administrative hearing for Plaintiff to secure representation, but Plaintiff declined that offer.

Because there is substantial evidence in the record to show that Plaintiff had the mental capacity to understand her right concerning representation at the social security hearing, and substantial evidence in the record to show that she was informed of those rights, the undersigned finds that Plaintiff's waiver of that right was made knowingly and intelligently.

II.    The ALJ did not adequately protect Plaintiff's due process rights

Plaintiff argues that the ALJ violated her due process rights by not informing or affording her the right to cross-examine the vocational expert during the administrative hearing. Plaintiff claims that the ALJ has a responsibility to inform

-9-

a claimant that she has a right to cross-examination of witnesses. *See* Dkt. No. 16 at 9-10.

The United States Court of Appeals for the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required, so that judgments will be vacated only when a party's substantial rights have been affected." *Morris v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988). Further, "[t]he ALJ does not have an absolute duty to advise an unrepresented claimant of the right to cross-examine witnesses, and failure to do so is seldom, by itself, reason for remand." *Jacobs v. Shalala,* 1993 WL 260990, \*5 (5th Cir. June 28, 1993).

But due process requires that a social security claimant be given the opportunity to cross-examine testifying experts. *See Tanner v. Sec'y of Health & Human Services,* 932 F.2d 1110, 1113 (5th Cir. 1991); *see also* SSR 13-1p (an ALJ's failure to allow cross-examination of witnesses is an abuse of discretion.).

Plaintiff argues that, aside from informing her of her right to cross examine witnesses, the ALJ gave Plaintiff no opportunity to cross-examine the VE. *See* Dkt. No. 16 at 9. The undersigned agrees. The April 6, 2018 transcript of the administrative hearing reveals that the ALJ did not allow Plaintiff an opportunity to cross examine the VE:

> ALJ: And in your opinion and in accordance with the SSR 00-4p, is there any conflict between your testimony in the case and the information in the *Dictionary of Occupational Titles?*

> VE: Yeah. I should have said the assembler, electronics worker, and the hand packager, they all have in the DOT the reaching at frequent. However, my observation and performance of those jobs, they don't require overhead reaching per the hypothetical.

> ALJ: All right. Ms. [T.], what I do is like I say I go back over everything you shared with me today. I look at all the records we have for you . You've got a lot of Parkland Health records, so I'll look through all the exams. I look at the job information. I just weigh it all and make a decision. And so, that's all we need today.

> CMLT: Okay.

Dkt. No. 13-1 at 153-54. The ALJ closed the hearing by telling Plaintiff "[a]nd so, that's all we need today," without affording Plaintiff the opportunity to cross examine the VE.

Plaintiff has indicated that, if she had the opportunity to cross-examine, she would have corrected the ALJ's hypothetical question to the VE, by including her significant functional limitations attributed to dizziness and Méniére's disease and plantar fasciitis. *See* Dkt. No. 18 at 3. This line of questioning may well have materially altered the VE's responses and the ultimate outcome of Plaintiff's case.

The undersigned concludes that Plaintiff's substantial rights were affected by the failure of the ALJ to afford her the her the opportunity to cross-examine the VE. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

III.    Error under *Stone v. Heckler*

Plaintiff next contends that the ALJ used the wrong legal standard in evaluating the severity of her cervical and lumbar degenerative disc disease,

coronary artery disease, carpal tunnel syndrome, obesity, and plantar fasciitis. *See* Dkt. No. 16 at 10-11. Plaintiff also argues that, by not applying the proper standard, the ALJ found that her vertigo and Méniére's disease were non-severe.

In *Stone v. Heckler*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).

In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d at 1308, 1311 (5th Cir. 1986). A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106.

Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a

showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept.4, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept.14, 2011), aff'd, 706 F.3d 600 (5th Cir. 2012) (applying harmless error analysis in *Stone* error cases).

Here, the ALJ recited the incorrect standard. Referencing 20 CFR 404.1522 and 416.922 and Social Security Rulings 85-28 and 16-3p, the ALJ defined an impairment as not severe if it "would have no more than a minimal effect on an individual's ability to work." Dkt. No. 13-1 at 126. Nonetheless, the ALJ found Plaintiff's diagnosis of cervical and lumbar degenerative disc disease, coronary artery disease, carpal tunnel syndrome, obesity, and plantar fasciitis, during the relevant time period of time. But the ALJ found Plaintiff's vertigo and Méniére's disease non-severe because "[t]he claimant received little to no treatment for this condition" and "[a]ny treatment that she did receive was conservative in nature." *Id.* at 131.

The standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work full-time. But the *Stone* severity standard does not allow for any interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. Thus, the ALJ did not actually state and apply the correct standard.

-13-

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F.Supp.2d at 806-07. But, more recently, courts have not automatically remanded such cases. *See, e.g., Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the error was harmless. *See Yanez v. Colvin*, No. 3:12-cv-1796-K-BG, 2013 WL 4766836, at *3 (N.D. Tex. Sept. 5, 2013).

Here, the government argues that, although the ALJ may have stated the incorrect standard, a review of the record reveals that any error was indeed harmless. The government argues that, while the ALJ might have stated the wrong standard, the objective medical records show no evidence of a severe impairment due to vertigo or Méniére's disease. *See* Dkt. No. 17 at 13-14.

The undersigned disagrees. A September 25, 2015, visit with Dr. Tresa Elizabeth Zacharias shows that Plaintiff complained of episodes of dizziness with the sense of spinning and tilt that lasted several hours on end. *See* Dkt. No. 13-1 at 416. At that time, Plaintiff reported "difficulty walking and veering to the left, slurred speech, clumsiness, sense of incoordination, vomiting, nausea, and postural instability." *Id.*

On February 26, 2016, a medical examination done by Dr. Angela Bates Flores shows that "[p]atient's dizzy spells progressed to 2-3 times per day," and that upon examination patient had a tendency to "turn[] towards the left while marching in place." *Id.* at 399.

By March 2016, Plaintiff's medical records show that her vertigo "can happen at any time of the day with no relation to activity. It lasts hours to days." *Id.* at 394-95. Plaintiff also complained that the bouts of dizziness sometimes cause her to black out, *see id.* at 307, and almost walk into walls, *see id.* at 147.

On this record, the undersigned concludes that the *Stone* was not harmless and that the ALJ might have found Plaintiff's vertigo or Méniére's disease to be severe if applying the proper standard.

IV.    <u>The ALJ's RFC is not supported by substantial evidence.</u>

Plaintiff argues that, by failing to incorporate limitations into the RFC which may reasonably be related to the impairments the ALJ deemed severe, the ALJ did not properly determine Plaintiff's RFC.

The Fifth Circuit has "held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions," and "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557)); *see also Moreno v. Astrue*, No. 5:09-cv-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010), *rec. adopted,* 2010 WL 3025519 (N.D.

Tex. Aug. 3, 2010) (explaining that, without expert medical interpretation, "evidence describing the claimant's medical conditions is insufficient to support an RFC determination").

In this case, the ALJ relied partially on State Agency physicians and Plaintiff's daily activities to determine the effects of Plaintiff's plantar fasciitis and carpal tunnel syndrom on her ability to work. The ALJ cited State Agency experts who opined that Plaintiff was capable of performing work subject to limitations consistent with plantar fasciitis and carpal tunnel syndrom. *See* Dkt. No. 13-1 at 128.

The ALJ found that Plaintiff's plantar fasciitis is an impairment that affects Plaintiff's ability to perform work-related activities. *See* Dkt. No. 13-1 at 125. Despite this finding, the ALJ determined that Plaintiff could stand and walk for 6 hours of an 8-hour workday. *See id.* The ALJ based his opinion on the opinions of State Agency physicians. *See id.* at 178, 187.

But Plaintiff's treating physician records reveal swelling and degenerative changes in her feet. *See id.* at 467. That swelling is made worse with walking. *See id.* Her medical records also reveal that she was advised to "avoid activities" that cause foot pain. *See id.* at 416. This would presumably include walking or standing for prolonged periods of time.

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the

treating physician only if the ALJ performs a detailed anlaysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000).

Similarly, the ALJ found that Plaintiff's carpal tunnel is an impairment that affects Plaintiff's ability to perform work-related activities. *See* Dkt. No. 13-1 at 125. Plaintiff's medical tests show "significant slowing of the median nerve" in both her left and right hands. *See id.* at 546. Plaintiff also reported tingling, numbness and pain in her hands, which was consistent with the medical tests. *See id.* at 539. And Plaintiff was recommended to wear splints on her hands. *Id.* at 542.

Notwithstanding the medical evidence, the ALJ found that Plaintiff could handle and finger frequently. The ALJ did not refer to any medical opinion that suggests that, despite Plaintiff's carpal tunnel syndrome and her allegations of pain and numbness, she could use her hands for frequent handling and fingering.

The ALJ erred by disregarding relevant medical evidence when determining Plaintiff's RFC and, had the ALJ considered that evidence, the RFC determination might have been different.

V.    The ALJ's Step Five finding

Plaintiff argues that, by relying on the Dictionary of Occupational Titles ("DOT"), the ALJ failed to establish the existence of work in significant numbers that Plaintiff could perform. The basis for Plaintiff's argument is that other, commercially available data show that there are far fewer jobs available in the

economy than what the VE testified.

Because this case should be remanded to the ALJ to reconsider the medical evidence, the Court need not evaluate whether substantial evidence supports the ALJ's step five finding. But the undersigned notes that, even though a conflict may have existed between the VE testimony and other commercially available data, "the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 200).

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court,

except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: January 24, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE